A89A0665. WESTIN HOTELS, INC. v. NATKIN SERVICE COMPANY.
(385 SE2d 141)

BEASLEY, Judge.

Plaintiff Westin Hotels, Inc., appeals from a directed verdict judgment favoring defendant Natkin Service Company in a suit for negligence in servicing the air conditioning system in Westin's Peachtree Plaza Hotel.

Natkin was under contract to service, repair and monitor the Plaza's cold generator machines. Natkin's employee, Lunsford, was sent in response to the call of Westin's chief engineer to service one of its three chiller units, which was not producing enough cold water to adequately chill the hotel. A few hours after the repairman Lunsford left, pipes of the unit he had been working on burst, resulting in over a quarter of a million dollars in damage to the machine and water damage to the hotel property. Westin contended that Lunsford failed to exercise a reasonable degree of care, skill and ability in servicing, repairing and monitoring the cold generator machines so that Natkin was liable for the damages proximately caused by Lunsford's negligence under the doctrine of respondeat superior. Westin also sought punitive damages on the ground that Lunsford demonstrated a reckless disregard for the safety of Westin's property by leaving the hotel

when he knew the cold generator machine was malfunctioning.

Trial commenced after extensive discovery. Natkin moved for a directed verdict at the close of Westin's evidence, on two bases: 1) there was only circumstantial evidence that Lunsford rendered ineffective a freeze stat (similar to a thermostat), which is a safety device to automatically shut down the water chiller pump if the unit's water temperature approached freezing, and that such circumstantial evidence could not successfully counter Lunsford's direct disavowal; 2) if Lunsford had not "jumpered out" the freeze stat, he had no duty to warn the hotel even if he knew the unit had or may have frozen up. The court granted the directed verdict on the first ground.

1. " 'A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict. OCGA § 9-11-50 (a) [Cits.]' [Cit.]" *Wheeler v. McDonald,* 175 Ga. App. 785, 786 (2) (334 SE2d 367) (1985). "It is permissible only in situations where, 'if there were a determination the other way, it would have to be set aside by the court.' [Cit.] Furthermore, evidence in cases of directed verdict must be construed most favorably toward the party opposing the motion. [Cits.]" *Nationwide Mut. Ins. Co. v. Ware,* 140 Ga. App. 660, 664 (1) (c) (231 SE2d 556) (1976).

The evidence favoring Westin showed that the Plaza's chief engineer, Cash, called Natkin to send someone to fix the number one chiller because it was not producing one hundred percent cooling. Natkin's employee, Lunsford, a skilled and knowledgeable repairman, was sent out and began to "retrim" the unit, that is, to put back into balance the lithium bromide and the water. It was necessary to run the chill water pump while trimming. It cut off three times. Twice Lunsford had the hotel air conditioning operator reactivate it. On the third occasion, Lunsford knew that the solution pump was still working. Under such circumstance, Lunsford was aware that the water temperature would keep coming down until the freeze stat would cut the pump off. Lunsford also knew that when the chill water pump stopped, there could be a freezing of liquid in the pipes. If the freeze stat had shut the unit down, the trim work would have to begin again after a period of waiting.

After it had cut off the third time, Lunsford decided to leave as he had been there about six hours and was concerned that he would get a parking ticket. He shut down the number one chiller and said he would be back in the morning. It was possible that freezing had already taken place in the pipes going through the evaporator unit. Lunsford did not valve off the unit or suggest it be done. The water damage was caused when the ice which formed in the evaporator unit melted and thousands of gallons of water came out of the tower, went

into the unit, and burst out of the sight glass onto several floors of the hotel. Valving off would have prevented the water from getting into the machine and escaping from it.

Westin's consultant engineer investigated the incident and interviewed Lunsford. He testified, as an expert, that the general duty and obligation of a serviceman like Lunsford in an emergency situation was to prevent persons and the machine from being injured and then to secure the machine so it did not continue to do damage. He also testified that it was a known practice in the industry that the freeze stat could be temporarily jumpered out to keep the cycle in order to perform the trim work without waiting for another twenty or thirty minutes to stabilize after the freeze stat stopped it. Lunsford admitted he knew how to do this. The engineer further testified that in his opinion the "jumpering out" of the freeze stat in conjunction with the stoppage of the chilled water system caused the freezing of the unit, and that the failure to secure the machine by valving off the water and steam permitted the machine, when it thawed out, to damage itself and the building.

Westin introduced into evidence the machine's electrical control panel and freeze stat, which its expert had examined. He testified that such evidence aided in reaching his conclusions about the machine failure because he found a splicing in certain wires of the control panel which bypassed the freeze stat and a jumper cable. He also found that the permanent connection in the other two units had not been similarly changed.

The hotel's chief engineer testified that he did not know of any Westin employee who had or might have jumpered out the freeze stat nor of any reason why any employee would need to, as the only purpose of it would be to do retrimming. No one had done any retrimming of the unit for at least several months, as it had been the winter season and warm weather was approaching. The incident occurred on March 27. He said the operator of the machine would normally be the one to valve the unit off.

"In considering whether a verdict should be directed, '(t)he plaintiff is not required, even when relying only on circumstantial evidence, to establish his contentions to the exclusion of every other reasonable hypothesis. [Cits.]' [Cit.] When the evidence is subject to more than one construction at the time the motion for directed verdict is made, it does not demand a verdict for either party. [Cit.] ' "(A) court cannot direct a verdict where there is any reasonable inference supported by evidence which would authorize a verdict to the contrary." ' [Cit.]" *Saxon v. Sylvania Mobile Homes*, 165 Ga. App. 47, 48 (299 SE2d 52) (1983).

Westin produced evidence of timing and circumstance which raised the inference that any jumpering of the freeze stat was done by

Lunsford, taking into account that there had not been a similar problem previously. Lunsford had the opportunity, capability, and motive to temporarily jumper it. He expected to return the next day to finish the job and thus also to have the opportunity to again connect it. No one else had recently retrimmed the machine. There was no reason for the machine operator to jumper the freeze stat. This was enough to support Westin's claim of negligence so as to warrant consideration by the trier of fact and preclude a directed verdict.

2. Appellant also contends that the trial court erred in excluding from evidence an invoice from Natkin to Westin. Due to the context in which it was presented and the unlikelihood of its being offered again at retrial under the same circumstances, the question is moot and we decline to rule on it. See *Gerald v. State*, 189 Ga. App. 155, 156 (2) (375 SE2d 134) (1988).

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED JULY 14, 1989 —
REHEARING DENIED JULY 26, 1989.

*Sutherland, Asbill & Brennan, William D. Barwick, William R. Wildman*, for appellant.

*R. Chris Irwin & Associates, R. Chris Irwin*, for appellee.